IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ATA NAHOURAII, | ) | Civil Action No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| INDIANA UNIVERSITY OF | ) | |
| PENNSYLVANIA and ROBERT CAMP, | ) | |
| in his official and individual capacities, | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL REQUESTED |

## COMPLAINT

AND NOW comes Plaintiff, Ata Nahouraii (hereinafter "Dr. Nahouraii"), by and through undersigned counsel, and files this Complaint for remedies and damages under Title VII of the Civil Rights Act, the Pennsylvania Human Relations Act, for violation of his rights guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution through 42 U.S.C. § 1983, and for breach of contract.

## I. PARTIES

1.  Plaintiff Ata Nahouraii ("Dr. Nahouraii") is a resident of Allegheny County, Pennsylvania.

2.  Defendant Indiana University of Pennsylvania ("IUP") is a Pennsylvania State System of Higher Education university located in Indiana County, Pennsylvania and employs in excess of 500 employees.

3.  IUP has a branch campus in Monroeville, Pennsylvania and conducts business in Allegheny County.

4.  Defendant Dr. Robert Camp is Dean of IUP's Business School and a supervisor of

Dr. Nahouraii.

5. Dean Camp is being sued in his individual and official capacities.

## II. JURISDICTION

6. Jurisdiction of this Court over the matters in this Complaint is founded upon 28 U.S.C. § 1331 and on 28 U.S.C. § 1367(a).

## III. VENUE

7. The events related in this Complaint occurred in Allegheny County, Pennsylvania, in the Western District of Pennsylvania; therefore, venue is proper in this Court.

## IV. FACTS

8. Dr. Nahouraii is a naturalized United States citizen of Iranian heritage, his date of birth is October 3, 1940, and he currently is 70 years of age.

9. Dr. Nahouraii has been a tenured full professor at IUP since 1993.

10. Dr. Nahouraii engaged in conduct protected by state and federal fair employment practice statutes.

11. Dr. Nahouraii previously filed charges of employment discrimination on the basis of age and race and retaliation against the Defendants.

12. Dr. Nahouraii also filed an employment discrimination lawsuit against both Defendants in federal court in the Western District of Pennsylvania docketed at 01-2461.

13. Dr. Nahouraii further filed grievances against Defendants alleging discrimination and retaliation.

14. In 2006, the Parties settled the federal lawsuit by written agreement.

15. Among other things, Defendants agreed that when Dr. Nahouraii returned from a

negotiated one year leave of absence, he would "retain the full eligibility for teaching in the EMBA program, overseas program in India commensurate with his position as a full, tenured professor."

16. The Parties specifically pledged "to deal with each other in the future in good faith as obligated under the CBA."

17. Moreover, Defendants promised to remove from IUP's records the following documents relating to Plaintiff: all pertinent records of his removal from teaching duties in the Fall Semester of 2000, internal correspondence pertaining to that removal (including all student complaints), his 5 year evaluation written by Dr. Camp and all letters from then President Petit including one dated March 11, 2003 and another dated August 14, 2003.

18. Since returning to IUP, Dr. Nahouraii has been discriminated and retaliated against by Defendants, in particular by Dean Camp.

19. Dr. Nahouraii filed a Charge of Discrimination on or about October 1, 2008 with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission docketed as 533-2009-00008 setting forth several discriminatory/retaliatory actions taken against him by Dean Camp.

20. The EEOC recently issued a Right to Sue letter on or about April 29, 2011.

21. Dr. Nahouraii was eliminated as a potential selection as Department chairperson.

22. Defendants were required under the applicable rules and procedures to provide a reason for this action.

23. Despite Dr. Nahouraii's request, no reason was provided for this action.

24. In contrast, Defendants provided a reason to another Department faculty member, Jim Rodger, as to why he was not considered for the position.

25. Defendants' unjustified interference with Dr. Nahouraii's candidacy for Chairperson resulted in a loss of income to Dr. Nahouraii who at the very least would have received 8 credits each Summer as Department Chairperson instead of the 3 or 6 credits he did receive for teaching summer courses.

26. Defendants also denied Dr. Nahouraii the opportunity to teach graduate level courses, contrary to a 2004 ruling of Arbitrator Scott E. Buchneit, the 2006 Settlement Agreement, as well as Dean Camp rescinding on June 20, 2008 his unilateral requirement for teaching graduate courses.

27. No valid reason exists to justify this decision.

28. Defendants repeatedly denied Dr. Nahouraii a research release thereby inhibiting his scholarly growth.

29. He was forced to teach 4 classes (12 credits/semester) whereas his colleagues were teaching 3 classes (9 credits/semester).

30. No valid reason exists to justify this decision.

31. Defendants, in particular Dean Camp, assigned Dr. Nahouraii to teach an inappropriate undergraduate level class despite an APSCUF and Administration agreement directing Dean Camp to rescind his non-standard criteria for teaching Graduate classes on June 20, 2008.

32. Dr. Nahouraii taught 4 classes for the Fall Semester 2008 while all other members of the Department taught only 3 classes.

33. Defendants, in particular Dean Camp, denied Dr. Nahouraii the opportunity to teach his approved developed on-line course for Quantitative Methods Graduate level.

34. Dean Camp denied this opportunity claiming that the developer must have taught the course before, even though Dr. Nahouraii has taught the course since 1982 and the other two faculty

permitted to develop the course (younger and less senior than Dr. Nahouraii) had never before taught the course.

35. This action resulted in a loss of $2,400 and, under University procedures, will prohibit Dr. Nahouraii from teaching this on-line course for the next five years.

36. Defendants again denied Dr. Nahouraii the opportunity to teach a Graduate EMBA course for Spring 2009 semester - against Dr. Nahouraii's Settlement Agreement.

37. Defendants again denied Dr. Nahouraii a research release for Spring 2009.

38. All other faculty members in his department who were less senior and/or younger than Dr. Nahouraii, and several untenured faculty were given the research releases thereby allowing them to teach only 3 classes.

39. Dr. Nahouraii is required to teach 4 classes thereby increasing his teaching load by 25% over his colleagues.

40. Dean Camp, despite the CBA's contractual agreement, contacted the Department Chair and the Department Evaluation Committee Chair on September 18, 2008 with an official statement of how to prepare Dr. Nahouraii's performance evaluation report regarding scholarly growth activity, even though Dean Camp was directed by his superiors to rescind this stated requirement for all ECOB faculty.

41. The rescinding of this requirement was announced by Dean Camp via university e-mail on June 20, 2008 not only to Dr. Nahouraii but to the entire ECOB faculty.

42. The order to Dean camp to rescind his requirement was a result of Dr. Nahouraii's grievance, and the Administration's and APSCUF's agreement.

43. On February 2, 2008 at a meeting with APSCUF (Dr. L'Amoreaux), Administration

(Mrs. Kennedy), and Director of Social Equity (Mr. Jim Myers), it was agreed that Dr. Nahouraii has currency in scholarly growth.

44. On March 26, 2009, Dean Camp told Dr. Nahouraii face-to-face that his grievances were "frivolous" and his complaints of discrimination/retaliation were "dumb."

45. On March 30, 2009, Dean Camp cancelled a "Re-Organization Committee Meeting" because Dr. Nahouraii was scheduled to attend and Dean Camp asserted wrongfully that Dr. Nahouraii had not been elected a member of the "Strategic Committee," when Department Chair Dr. Kustim Wibowo and Department faculty member Dr. Pankaj had sent Dean Camp e-mails informing him that Dr. Nahouraii had been elected to such position.

46. On October 5, 2009, Dean Camp directed Dr. Nahouraii to "prepare, by November 1, 2009, a professional development plan for improving your teaching effectiveness and research/scholarly productivity."

47. This plan thereafter would be discussed in a meeting with Dean Camp and the Provost – Dr. Intemann.

48. The Dean's action was prompted, purportedly, by a single student (out of 120 students) complaint received at the end of the spring semester 2009.

49. However, Dean Camp admits in his letter that such complaint had been investigated and did not warrant any further action.

50. In addition, IUP itself determined that the complaint was not "substantiated."

51. Thus, under the circumstances, a single unsubstantiated student complaint cannot justify this punitive action and, as a result, is nothing more than a pretext for discrimination/retaliation and harassment.

52. Similarly, the Dean's reliance on Dr. Nahouraii's 5th year evaluation to justify the punitive action is a pretext for discrimination/retaliation.

53. Dean Camp completed Dr. Nahouraii's 5th year evaluation earlier that year and at that time did not require Dr. Nahouraii to undergo an interim evaluation for any alleged poor performance.

54. Thus, the reliance on such an evaluation for counseling well after-the-fact is not legitimate and provides evidence of pretext.

55. In and around November 2009, Dr. Nahouraii was listed on a proposal to teach an on-line graduate course known as QBUS 601.

56. Dean Camp wrongfully directed the Department Chair Dr. Wibowo to replace Dr. Nahouraii on the QBUS 601 on-line proposal because Dr. Nahouraii purportedly was "not eligible to teach graduate courses."

57. Contrary to Dean Camp's assertion, Dr. Nahouraii absolutely is "eligible to teach graduate courses."

58. Just weeks prior to Dean Camp's action, Dr. Nahouraii had received a letter dated October 20, 2009 from Dr. Timothy P. Mack, the Dean of IUP's School of Graduate Studies and Research, informing Dr. Nahouraii that he was qualified "for full eligibility to teach graduate courses."

59. Critically, Dean Camp was copied on the letter and, thus, was aware at the time of his decision that Dr. Nahouraii in fact was eligible to teach graduate courses.

60. In April 2010, Dean Camp wrongfully interfered with the Department's Summer Schedule which had a negative impact on Dr. Nahouraii.

7

61. Dr. Nahouraii was scheduled to teach the MIS course "IFMG 460" – a "firm" contract with 5 students.

62. Dean Camp unilaterally decided to remove Dr. Nahouraii from this course and assigned him a less desirable "contingent" contract that required 16 students.

63. This is evidenced by Department Chair Kustim Wibowo's email of April 15, 2010 which states that the "Summer schedule is modified based on Dr. Camp's directive."

64. Dean Camp removed this course from Dr. Nahouraii and gave it to Professor Gu, even though Professor Gu was not even available to teach during that period.

65. In August 2010, Dean Camp unilaterally and at the last minute changed the MIS Department schedule that had a punitive effect on Dr. Nahouraii's Fall 2010 schedule.

66. Dean Camp changed Dr. Nahouraii's schedule from 4 classes of QBUS 215 to just 3 classes of IFMG 101, with no research release. *See* Wibowo e-mail of 8/19/10 to the Department ("Dr. Gu will teach 3 classes of QBUS215 (originally were [to be] taught by Dr. Nahouraii)).”

67. Thus, Dr. Nahouraii was "underloaded."

68. Dr. Camp failed in his e-mail of September 3, 2010 to Dr. Nahouraii to justify why he [Dr. Nahouraii] was underloaded.

69. Dean Camp essentially flipped Dr. Nahouraii's courses with Prof. Gu, who went from 3 classes of IFMG 101[1] with a research release to 3 classes of QBUS 215 with a research release.

70. The last minute nature of the change and the "underloading" interfered with Dr. Nahouraii's class preparation and caused him emotional distress.

---

[1] In a September 23, 2010 email to Dr. Nahouraii, Dean Camp referred to the students in the 101 course as "less literate" and "less interested."

71. Dr. Nahouraii had only days to prepare for his classes which included ordering the text book.

72. While Dean Camp "underloaded" Dr. Nahouraii, he overloaded other Department faculty, namely Dr. Gu and Dr. Wibowo, which entitled them to extra compensation and caused IUP to pay more money that it had to if it simply permitted Dr. Nahouraii the opportunity to teach the normal 4 course load.

73. IUP's decision was not rational under the circumstances and smacks of retaliation.

74. Although requested by Dr. Nahouraii, Dean Camp refused to provide him with a release to complete his research, where such releases routinely are provided to all department members but which Dr. Nahouraii has not received in 10 years. *See* Camp email to Dr. Nahouraii of 9/3/2010.

75. Shortly after refusing to provide a research release, Dean Camp then called for Dr. Nahouraii to undergo "an interim evaluation during the academic year 2010-2011" purportedly based on a lack of evidence of his "continuing scholarly growth."

76. Thus, on the one hand Dean Camp refuses to provide Dr. Nahouraii a release to conduct his research, while on the other hand he orders him to undergo a punitive evaluation based on his purported failure to conduct such research.

77. Dean Camp's conduct in this matter plainly is unfair and likewise smacks of retaliation and harassment.

78. Dean Camp's claim that an interim evaluation was warranted based on a lack of evidence of "continuing scholarly growth" is false.

79. Dr. Nahouraii provided Dean Camp with evidence of scholarly growth as recently as

August 2010 when he forwarded Dean Camp a copy of his abstract on a research project he is working on entitled "The Peril of Digital Divide: Analysis & Commentary," which he presented at a conference in Virginia.

80. In November 2010, Dr. Nahouraii was passed over for certain "overload" assignments that are taught between the semesters even though he is at the top of the Department rotation list and should have received one.

81. Based on an email from Department Chair Wibowo of November 8, 2010, the decision for the assignment of these "winter 2010 classes" were "[b]ased on discussion with Dr. Camp."

82. Thus, Dean Camp by his scheduling of these classes negatively impacted Dr. Nahouraii and caused him financial harm.

83. In Summer 2011, Defendants denied Dr. Nahouraii the opportunity to teach in IUP's PES Program in India.

84. The compensation for this 5 week assignment is approximately $30,000, plus expenses.

85. Dr. Nahouraii was second on the Summer rotation list for this assignment and therefore should have received the assignment.

86. Pursuant to paragraph D of the Settlement Agreement reached between Dr. Nahouraii and IUP, the Parties had agreed that when Dr. Nahouraii returned from his one-year leave in 2008 that he would retain full eligibility for teaching in the EMBA program or overseas program in India commensurate with his position as a full, tenured professor.

87. The failure to assign him to this Program is discriminatory/retaliatory and a clear

breach of the Parties' Settlement Agreement.

88.     Defendants' claim that IUP uses only local professors as instructors for this Program is false because in Summer 2011 IUP assigned Department Professors Wibowo and Hyde as instructors for the Program.

89.     Dr. Nahouraii was # 2 in the Summer Rotation List and should have received this assignment rather than Dr. Hyde and Dr. Wibowo who were at the bottom of the same rotation list.

90.     Defendants took these actions against Dr. Nahouraii in retaliation for his protected conduct and/or because of his protected classes – race and age.

91.     To the extent that Defendants' justifications are based on past student complaints, Dean Camp's 2003 five year evaluation, and/or letters from President Petit all of which were to be removed from IUP's records, Defendants are in breach of the Settlement Agreement.

92.     Defendants' explanations constitute a pretext for discrimination and retaliation.

93.     As a result of Defendants' actions, Dr. Nahouraii has suffered damages including financial loss and emotional distress, as well as physical stress.

94.     Dr. Nahouraii seeks all remedies and damages available under federal and state law including interest, and punitive damages where appropriate.

## V. COUNTS

### COUNT I
### Plaintiff v. IUP
### Title VII – Retaliation

95.     The foregoing paragraphs are incorporated as if set forth herein at length.

96.     Dr. Nahouraii engaged in conduct protected by Title VII.

97.     Dr. Nahouraii filed charges of employment discrimination in 2008 and 2009-10 on

the basis of age and race and retaliation against the Defendants, filed an employment discrimination lawsuit against both Defendants in federal court in the Western District of Pennsylvania docketed at 01-2461 and settled it in 2006, and further filed grievances against Defendants alleging discrimination and retaliation.

98. Since this protected conduct, Dr. Nahouraii has been retaliated against by Defendants, in particular by Dean Camp.

99. As described above, Dr. Nahouraii has been subject to a continuing stream of materially adverse actions beginning in 2008 and continuing through today.

100. Based on the timing of the protected conduct, the constant antagonism between Dr. Nahouraii and Dean Camp, as well as Dean Camp's dismissive statements regarding Dr. Nahouraii's recent protected conduct, a causal connection exists between Dr. Nahouraii's protected conduct and the materially adverse actions.

101. As a result of the materially adverse actions, Dr. Nahouraii has suffered economic losses and been subject to emotional distress, physical stress, and reputation damage.

102. Dr. Nahouraii seeks all remedies and damages available under Title VII, including but not limited to, backpay, frontpay, compensatory damages for emotional distress and reputation damage, punitive damages, attorney's fees and costs, and prejudgment and post-judgment interest.

**COUNT II**
**Plaintiff v. IUP**
**Title VII – Discrimination on the Basis of National Origin**

103. The foregoing paragraphs are incorporated as if set forth herein at length.

104. Dr. Nahouraii is in a class protected by Title VII – Iranian born.

105. Dr. Nahouraii is qualified for his position as a tenured full professor, and also is

qualified to be a Department chairperson, to teach graduate level courses, to teach in the PES India Program, to receive research releases, and to receive course "overloads."

106. Dr. Nahouraii suffered adverse employment actions on numerous occasions described above, including but not limited to, interference with becoming Department Chair with no justification provided, denials to teach graduate level courses, denial to teach in India, denial of research releases, and denials of overload courses.

107. Similarly situated Department members outside of the protected class including Professors Rodger and Micki Hyde were treated more favorably than Dr. Nahouraii.

108. Defendants' justifications for the adverse employment actions are false and a pretext for discrimination.

109. As a result of the adverse employment actions, Dr. Nahouraii has suffered economic losses and been subject to emotional distress, physical stress, and reputation damage.

110. Dr. Nahouraii seeks all remedies and damages available under Title VII, including but not limited to, backpay, frontpay, compensatory damages for emotional distress, physical stress, and reputation damage, punitive damages, attorney's fees and costs, and prejudgment and post-judgment interest.

## COUNT III
### Plaintiff v. Dean Camp
### PHRA – Retaliation

111. The foregoing paragraphs are incorporated as if set forth herein at length.

112. Dr. Nahouraii engaged in conduct protected by the PHRA.

113. Dr. Nahouraii filed charges of employment discrimination in 2008 and 2009-10 on the basis of age and race and retaliation against the Defendants, filed an employment discrimination

lawsuit against both Defendants in federal court in the Western District of Pennsylvania docketed at 01-2461 and settled it in 2006, and further filed grievances against Defendants alleging discrimination and retaliation.

114. Since this protected conduct, Dr. Nahouraii has been retaliated against by Defendants, in particular by Dean Camp.

115. As described above, Dr. Nahouraii has been subject to a continuing stream of materially adverse actions beginning in 2008 and continuing through to today.

116. Based on the timing of the protected conduct, the constant antagonism between Dr. Nahouraii and Dean Camp, as well as Dean Camp's dismissive statements regarding Dr. Nahouraii's recent protected conduct, a causal connection exists between Dr. Nahouraii's protected conduct and the materially adverse actions.

117. As a result of the materially adverse actions, Dr. Nahouraii has suffered economic losses and been subject to emotional distress, physical stress, and reputation damage.

118. Dr. Nahouraii seeks all remedies and damages available under the PHRA, including but not limited to, backpay, frontpay, compensatory damages for emotional distress, physical stress, and reputation damage, attorney's fees and costs, and prejudgment and post-judgment interest.

### COUNT IV
### Plaintiff v. Dean Camp
### PHRA – Discrimination on the Basis of National Origin and/or Age

119. The foregoing paragraphs are incorporated as if set forth herein at length.

120. Dr. Nahouraii is in classes for national origin (Iranian born) and age (70 years of age) protected by the PHRA.

121. Dr. Nahouraii is qualified for his position as a tenured full professor, and also is

qualified to be a Department chairperson, to teach graduate level courses, to teach in the PES India Program, to receive research releases, and to receive course "overloads."

122.   Dr. Nahouraii suffered adverse employment actions on numerous occasions described above, including but not limited to, interference with becoming Department Chair with no justification provided, denials to teach graduate level courses, denial to teach in India, denial of research releases, and denials of overload courses.

123.   Similarly situated Department members outside of the protected classes including Professors Rodger and Micki Hyde (U.S. born, significantly younger) were treated more favorably than Dr. Nahouraii.

124.   Defendants' justifications for the adverse employment actions are false and a pretext for discrimination.

125.   As a result of the adverse employment actions, Dr. Nahouraii has suffered economic losses and been subject to emotional distress, physical stress, and reputation damage.

126.   Dr. Nahouraii seeks all remedies and damages available under the PHRA, including but not limited to, backpay, frontpay, compensatory damages for emotional distress, physical stress, and reputation damage, attorney's fees and costs, and prejudgment and post-judgment interest.

### COUNT V
### Plaintiff v. Defendants
### Section 1983 – Denial of Equal Protection

127.   Defendants, as state actors who, under color of state law, deprived Plaintiff of rights secured by the Equal Protection Clause of the Fourteenth Amendment by treating Plaintiff unfairly and differently in comparison to other similarly situated individuals on the bases of national origin, age, gender, and/or protected conduct as set forth above.

128. Dean Camp acted with a reckless or callous disregard of, or indifference to, the rights of Plaintiff.

129. This resulted in damages to the Plaintiff as set forth above.

130. As a result of Defendants' conduct, Plaintiff has been deprived of his constitutional rights to equal protection, and has been harmed by lost income and other emoluments of employment, including legal expenses, a disruption of his life, inconvenience, embarrassment and harm to his reputation.

131. Plaintiff seeks all remedies and damages permitted under Section 1983 including but not limited to, backpay, frontpay, compensatory damages for emotional distress, physical stress, and reputation damage, punitive damages, attorney's fees and costs, and prejudgment and post-judgment interest.

## COUNT VI
### Plaintiff v. Defendants
### Breach of Contract

132. The foregoing paragraphs are incorporated as if set forth herein at length.

133. In December 2006, the Parties settled the federal lawsuit by written agreement.

134. Among other things, Defendants agreed that when Dr. Nahouraii returned from a negotiated one year leave of absence, he would "retain the full eligibility for teaching in the EMBA program or overseas program in India commensurate with his position as a full, tenured professor."

135. The Parties specifically pledged "to deal with each other in the future in good faith as obligated under the CBA."

136. Defendants have breached the Settlement Agreement.

137. Defendants have breached the duty of good faith and fair dealing.

138. Among other things, Defendants have denied Dr. Nahouraii's eligibility to teach in the EMBA program [graduate level courses], on-campus graduate level courses, and overseas program in India in violation of the Agreement and the duty of good faith and fair dealing.

139. Defendants also have failed to deal with Dr. Nahouraii in good faith in violation of the Agreement and the duty of good faith and fair dealing.

140. This failure is shown by the numerous adverse employment actions and materially adverse actions suffered by Dr. Nahouraii as described above.

141. Defendants promised to remove from IUP's records the following documents relating to Plaintiff: all pertinent records of his removal from teaching duties in the Fall Semester of 2000, internal correspondence pertaining to that removal (including all student complaints), Dr. Camp's 5 year evaluation, and all letters from then President Petit including one dated March 11, 2003 and another dated August 14, 2003.

142. Based on information and belief, Defendants failed to remove those records and have relied on them speciously to justify adverse employment actions and materially adverse actions taken against Plaintiff in breach of the specific terms of the Settlement Agreement.

143. As a result of Defendants' breaches, Dr. Nahouraii has suffered economic losses including, but not limited to, the income he would have received had he been assigned to teach in India in Summer 2011.

144. WHEREFORE, Plaintiff seeks all remedies and damages permitted under law and in an amount in excess of $75,000.

Respectfully submitted,

LIEBER, HAMMER, HUBER, & BENNINGTON, P.C.


s/James B. Lieber
James B. Lieber
PA I.D. No. 21748
Thomas M. Huber
PA I.D. No. 83053
5528 Walnut Street
Pittsburgh, PA 15252
(412) 687-2231 (tel.)
(412) 687-3140 (fax)
jlieber@lhhb-law.com